UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MARCUS T STRINGER #127238/513433 | CIVIL ACTION NO. 22-cv-1983 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| C WASHINGTON ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Marcus T. Stringer ("Plaintiff") is a self-represented inmate who was formerly housed as a pretrial detainee at the Caddo Correctional Center. He filed this civil rights action against C. Washington and ERT Riley based on allegations of excessive force. This is one of 18 civil actions filed by Plaintiff in the past two years related to his detention. All but this one have either been dismissed or are pending action on a recommendation of dismissal.

Deputy DeCarlos Washington and Deputy Brian Riley answered the complaint and identified themselves as the persons targeted by it. Before the court is their Motion for Summary Judgment (Doc. 13) that attacks the claims on the merits. Despite notice and opportunity, Plaintiff has not filed any opposition. For the reasons that follow, it is recommended that the motion be granted and that all claims be dismissed.

**Plaintiff's Complaint**

Plaintiff alleges that on June 28, 2022, he was on cell confinement due to fighting with the workers who passed out food in the jail. Plaintiff states that this meant his cell

door should not be opened and that a tray hatch should have been used to deliver his food. Despite the restriction, a deputy did open his door, and Plaintiff told the deputy to call a sergeant because Plaintiff was allergic to the red sauce that was being served.

Plaintiff alleges that Deputy Washington then came to the cell, gave the original deputy a can of mace, and that deputy sprayed Plaintiff. Washington allegedly grabbed Plaintiff "from the back and chock me." ERT Riley is said to have "tased me on my back."

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Defendants' Summary Judgment Evidence**

Deputies Washington and Riley submit detailed declarations (in compliance with 28 U.S.C. § 1746) from themselves, the jail's health services director, the deputy who administered the chemical spray, and Captain Sharon Piggs. Captain Piggs attaches to her declaration video of the incident, and she provides a detailed and helpful description of the video that states who is doing what and when. Taken together, the summary judgment evidence provides a thorough description of the relevant events.

Deputy Arndra Stephens states in a declaration that on the date of this incident he was training in Housing Unit Alpha under the supervision of Deputy DeCarlos Washington. At about 4:00 p.m., while Stephens was collecting food trays, Plaintiff stepped out of his cell and refused to go back inside. Stephens states that he repeatedly ordered Plaintiff to return inside of his cell, and Plaintiff repeatedly refused. Plaintiff moved his footlocker to the doorway and sat down, preventing Stephens from closing the door. Plaintiff stated that he would not go back in his cell unless he could speak with Deputy Washington or the sergeant on duty. The video (no audio) depicts those events.

Deputy Washington states in his declaration that he saw Plaintiff sitting on his footlocker and blocking the cell door. Plaintiff was also being argumentative with Deputy Stephens and using profanities. Washington approached Plaintiff's cell to assist Deputy Stephens. He ordered Plaintiff to return inside his cell, but Plaintiff refused to comply.

Both Washington and Stephens state in their declarations that Washington handed Stephens his can of Freeze +P, an incapacitating chemical spray used at the jail. Washington told Plaintiff that he would be sprayed if he did not get inside his cell. Plaintiff

replied, "You spray me, I'm going to punch you in yo shit." Washington ordered Plaintiff to get in his cell several more times, and the video depicts Washington motioning with his arm for Plaintiff to get in the cell. When Plaintiff refused to comply, Washington directed Stephens to spray the chemical, and Stephens delivered a short burst to Plaintiff's facial area. The video depicts the incident and indicates that the burst lasted about one second.

The deputies state that Plaintiff, after being sprayed, began to quickly walk away. The video shows that Plaintiff immediately left his cell and walked quickly away from the deputies into the common area of the housing unit in which other inmates were present. Deputy Washington ran after Plaintiff and tackled him to the ground from behind. The video shows the tackle but not in sufficient detail to determine exactly where Washington's hands were placed. Washington provides clarification in his declaration that he "did not grab Stringer by the neck or choke him during the tackle or subsequent struggle." He adds that he released his hold once Plaintiff was on the ground. Deputy Stephens corroborates Washington's description.

The two deputies struggled with Plaintiff on the ground and attempted to secure him in restraints. A "Signal 70" was called for all available deputies to assist, and an Emergency Response Team ("ERT") of multiple deputies soon arrived. The deputies were able to secure Plaintiff in restraints within about 45 seconds.

Deputy Riley states in his declaration that he was a member of the ERT. On arrival in the housing unit, he saw deputies on the ground struggling with Plaintiff. He gave loud verbal commands for Plaintiff to give Riley his hands, but Plaintiff refused to comply. Riley deployed his X26 Taser on Plaintiff in an attempt to gain compliance, and Plaintiff

ceased struggling and became compliant. Plaintiff was secured in handcuffs, assisted to his feet, and escorted to the medical unit for evaluation. The video generally corroborates this description of the events. The whole incident, from chemical spray to standing Plaintiff up, took about a minute.

Health Services Director Kelli Hayes, RN, provides a declaration regarding Plaintiff's medical attention. Her declaration and attached records show that Plaintiff was seen in the medical unit around 4:00 p.m. on June 28, 2022 after being involved in a Signal 70. The only note is, "Offender states no injuries." Three days later, Plaintiff complained to medical of neck and shoulder pain "from being tased." It was noted that Plaintiff was already on ibuprofen. He asked to talk to a doctor about getting back on Gabapentin (a prescription drug) for nerve pain associated with old gunshot wounds. These are the extent of Plaintiff's medical records associated with this incident.

**Analysis**

The claims of a pretrial detainee are governed by the Due Process Clause, rather than the Eighth Amendment that applies to claims by convicted prisoners. "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015). Objective reasonableness turns on the facts and circumstances of each particular case, and a court must make the determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. Id.

A non-exclusive list of factors that may bear on the reasonableness or unreasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.

Defendants' uncontested summary judgment evidence shows that they are entitled to summary judgment under the Kingsley standard. Plaintiff disobeyed several verbal orders to enter his cell so that the door could be closed, and he was warned that chemical spray would be used if he did not comply. Plaintiff still refused compliance, and a short burst of spray was administered. When Plaintiff attempted to flee the area, he was promptly taken to the ground. Despite several deputies attempting to gain control of Plaintiff, his resistance was not overcome until Deputy Riley administered his taser. Considering Plaintiff's disobedience to multiple orders, his level of physical resistance, the need to gain compliance to control the jail environment and this inmate, the multiple opportunities for Plaintiff to avoid the entire situation or end it after it began, and the minimal harm sustained by Plaintiff, the defendants acted with objective reasonableness under the facts and circumstances of this case. Each is entitled to summary judgment dismissing all claims against him.

Accordingly,

It is recommended that Defendants' Motion for Summary Judgment (Doc. 13) be granted and that all claims against all defendants be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS, DONE AND SIGNED in Shreveport, Louisiana, this 30th day of June, 2023.

Mark L. Hornsby
U.S. Magistrate Judge